UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARTIN TORRES-SOLORZANO,

Petitioner,

v.

MARKWAYNE MULLIN, *et al.*,

Respondents.

Case No. C26-2391-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner Martin Torres-Solorzano is currently detained by U.S. Immigration and
Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma,
Washington.  He filed, through counsel, this habeas action under 28 U.S.C. § 2241, challenging
both his November 5, 2025, redetention, as well as his ongoing detention at the NWIPC, as
violative of his due process rights under the Fifth Amendment.  Dkt. 1.  He seeks immediate
release or, alternatively, a bond hearing at which Respondents would bear the burden of
justifying his continued detention by clear and convincing evidence.  *Id.* ¶ 11.  Respondents filed
a return (Dkt. 5), together with a sworn declaration from U.S. Department of Homeland Security
("DHS") Deportation Officer Christopher Hubbard (Dkt. 6) and an unsworn declaration from
their counsel Jennifer Wong (Dkt. 7).  Petitioner filed a traverse in reply (Dkt. 8).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (Dkt. 1) for the reasons set forth below.

## I.   BACKGROUND

Petitioner is a native and citizen of Mexico who entered the United States twice in August 1998; both times being encountered by border patrol and allowed to voluntarily return to Mexico. Hubbard Decl., ¶¶ 4-5. Petitioner asserts he last entered the United States in August 1998 and has lived here for over twenty-five years. Dkt. 1, ¶ 24.

On March 8, 2011, Petitioner was taken into ICE custody and issued a Notice to Appear ("NTA"), charging him with inadmissibility under the Immigration and Nationality Act (INA). Hubbard Decl., ¶ 9; Wong Decl., ¶ 2, Ex. 2. The NTA directed him to attend an immigration hearing in Tacoma, Washington on "a date to be set" and he was thereafter released from custody on an Order of Release on Recognizance ("OREC"). Wong Decl., ¶ 2, Exs. 2 at 2, 1 at 5.

While released, Petitioner filed applications for cancellation of removal and to adjust his status in December 2011. Dkt. 1, ¶ 28. A Form I-130 (Petition for Alien Relative) filed by a family member on his behalf had been approved in 2003. *Id.* ¶ 27. Petitioner asserts that for the fourteen years following his release, he "complied with conditions of his release[,] . . . maintained employment authorization, resided openly in Washington and continued pursuing available immigration relief." Dkt. 1, ¶ 29.

Petitioner's removal proceedings were administratively closed on August 28, 2014, after an immigration judge granted a joint motion to allow Petitioner to pursue relief with U.S. Citizenship and Immigration Services (USCIS). Hubbard Decl., ¶ 11. Respondents

acknowledge that Petitioner was not subject to conditions of release after removal proceedings ended in 2014.  Dkt. 5 at 8.

On November 5, 2025, ICE arrested Petitioner in Yakima during a "targeted enforcement action" that appears to have been specifically focused on locating Petitioner for being "illegally present in the United States."  *Id.* ¶ 30; Hubbard Decl., ¶ 15; Wong Decl., ¶ 2, Ex. 1 at 4.  He was identified, handcuffed, arrested, and thereafter transported to a nearby ICE facility for processing.  Wong Decl., ¶ 2, Ex. 1 at 4.  He was then transferred to the NWIPC, where he remains detained.  Hubbard Decl., ¶¶ 13, 18.

Petitioner was not provided notice of the reason for his arrest, nor an opportunity to challenge his arrest at a hearing before his November 5, 2025, redetention.  Dkt. 1, ¶¶ 30, 32, 34.

While in custody, Petitioner attended an immigration hearing on April 30, 2026, at which an immigration judge ordered him removed to Mexico.  Hubbard Decl., ¶ 16; Wong Decl., ¶ 2, Ex. 3.  Petitioner filed an appeal of his removal order with the Board of Immigration Appeals on May 21, 2026, which remains pending.  Dkt. 1, ¶ 36.  Accordingly, because Petitioner's removal order is not yet administratively final, *see* 8 C.F.R. § 1241.1; 8 U.S.C. § 1231(a)(1)(B), his detention remains governed by the provisions of the INA for noncitizens pending removal, 8 U.S.C. §§ 1225-26.

On July 9, 2026, Petitioner filed the instant petition, challenging his detention as unlawful.  Dkt. 1.

## II.  LEGAL STANDARDS

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions."  28 U.S.C. § 2241(a).  Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

### III.   DISCUSSION

Petitioner asserts that his redetention, without first receiving notice or an opportunity to challenge the basis, was unconstitutional when assessed under the framework discussed in *Mathews v. Eldridge*, 424 U.S. 319, 1976.  Dkts. 1, ¶¶ 59-65, 8 at 10-15.  He also asserts his ongoing detention without a bond hearing, which is now over nine months, has become unconstitutionally prolonged.  *Id.* ¶¶ 68-69, 72.

Respondents assert Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), that his redetention complied with *Mathews*, and that his current detention has not become unreasonably prolonged under *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019).  Dkt. 5 at 6-12.

For the following reasons, the Court finds Petitioner's detention is governed by § 1226(a) and *Mathews* entitles him to release.  The Court therefore does not reach Petitioner's prolonged detention claim.

### A.   Statutory Detention Authority

Sections 235-36 of the INA, codified at 8 U.S.C. §§ 1225-26, govern immigration detention for those awaiting removal from the United States.  Section 1226(a) sets the default rule permitting discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018).  Section 1225 applies to "applicants for admission," *i.e.*, a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]"  8 U.S.C. § 1225(a)(1).  Applicants for admission are generally subject to mandatory detention under § 1225(b), with release only on parole "for urgent

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287. In *Jennings*, the Court noted that "§ 1225(b) applies primarily to [noncitizens] seeking entry into the United States." *Jennings*, 583 U.S at 297.

Relying on out-of-circuit authority, Respondents contend Petitioner falls under § 1225(b)(2)(A) as an "applicant for admission" who is also "seeking admission" into the United States. Dkt. 5 at 4-6. As Respondents acknowledge, *see id.* at 4, their position—at least with respect to noncitizens who entered the United States without inspection—was rejected in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1329 (W.D. Wash. 2025). Relevant here, courts have adopted and extended the reasoning of *Rodriguez Vazquez* and found noncitizens who *were* initially inspected, released, then later redetained to be "present in the United States" and thus similarly subject to discretionary detention under 1226(a). *E.g., Ledesma Gonzalez v. Bostock*, 808 F. Supp. 3d 1189, 1197 (W.D. Wash. 2025); *Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025). Moreover, the Ninth Circuit affirmed *Rodriguez Vazquez* during the pendency of this case, holding that noncitizens present without admission apprehended in the interior of the United States are subject to § 1226, not § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026); *see also id.* at *10 ("In this case, we conclude that § 1225(b)(2)(A), based on its text and context, is best construed as applying to [noncitizens] entering the United States at the border. Section 1226, by contrast, is best understood as governing inadmissible and deportable [noncitizens] present in the interior of the United States.").

Respondents' reliance on *Blanche v. Lau*, 609 U.S. ---, 146 S. Ct. 1981 (2026), and *Mullin v. Al Otro Lado*, 609 U.S. ---, 146 S. Ct. 2079 (2026), to support their argument is misplaced. *Blanche* addressed parole under § 1182(d)(5)(A) and a noncitizen "regarded" as

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

seeking admission under § 1101(a)(13)(C)(v), a situation not present here.  146 S. Ct. at 1987. *Mullin* addressed when a noncitizen "arrives in the United States[,]" also not at issue here, and distinguished "applicants for admission" from those "otherwise seeking admission."  146 S. Ct. at 2087 (citing § 1225(a)(3)). The Ninth Circuit likewise rejected conflating those terms in *Rodriguez Vazquez*.  2026 WL 2196424, at \*16.

Here, ICE arrested Petitioner—not at the border and seeking admission, but rather at a Yakima gas station after having been living, *i.e.*, "present" in the United States since 1998. Section 1226(a) governs.

### B.    *Mathews* and Due Process

Due process protections extend to all persons within the United States, including noncitizens.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest.  *Mathews*, 424 U.S. at 332.  Courts apply *Mathews* by weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens.  *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

#### 1.    *Private Interest*

Petitioner has a substantial liberty interest in remaining free after spending over two decades living in the United States, with many of those years unconditionally free.  *See Zadvydas*, 533 U.S. at 690; *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025).  A person previously released is deprived of that interest upon renewed detention, particularly in the absence of a change in

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

circumstances or some other intervening factor necessitating the redetention.  *See Morrissey*, 408 U.S. at 482; *Makuey v. Scott*, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025).

Respondents argue Petitioner's liberty interest in remaining out of custody was "reduced" because he was released in 2014 without conditions when his removal proceedings ended.  Dkt. 5 at 8.  According to Respondents, the Government neither "explicitly or implicitly" promised Petitioner anything because he was not under "any conditions of release or subject to removal proceedings."  *Id.*  This position is entirely without merit.

Petitioner's removal proceedings were dismissed in 2014 on an *agreed* motion so that Petitioner could pursue immigration relief, so there is no question DHS knew Petitioner was thereafter living in the United States unconditionally.  For Respondents to suggest, twelve years later, that the Government had not implicitly promised Petitioner an interest in remaining free is, to put it mildly, inexplicably disingenuous.  Even those who are *conditionally* released take with them the implicit promise that they will remain free and only redetained upon a change in circumstances.  *Morrissey*, 408 U.S. at 479 (acknowledging a "parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole").  The Court does not find Petitioner's liberty interest was reduced because the Government agreed to his unconditional release.  This factor favors Petitioner.

2.      *Risk of Erroneous Deprivation*

The risk of error was high, as shown by the Government's incorrect reliance on § 1225(b) to justify Petitioner's detention.  Further, when DHS released Petitioner in 2011 on his recognizance, the Department necessarily found that he was neither a danger to the community nor a flight risk.  *See* 8 C.F.R. § 1236.1(c)(8).  To then redetain Petitioner without first

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

considering those factors posed a high risk of an erroneous deprivation. *See E.A. T.-B.*, 795 F. Supp. 3d at 1323 (collecting cases).

Respondents do not dispute that Petitioner was redetained without notice or an opportunity to respond, but contend that the risk was low because Petitioner did not have "permission to be in the United States when he was redetained." Dkt. 5 at 8. First, there is no reasonable way to characterize the Government's agreement to release Petitioner into the United States in 2014 and DHS's subsequent twelve-year acquiescence as anything but "permissive." To be sure, Petitioner's release did not equate to an "admission" under the INA. However, the Court does not interpret Petitioner's position to be entitlement to unqualified freedom but rather adequate process. *See* Dkt. 1, ¶ 64. The focus at this stage in the *Mathews* analysis is on the risk of an erroneous deprivation and not, as Respondents assert, on whether the noncitizen had the Government's permission to be here. Indeed, taking Respondents' § 1225(b) position at face value, very few noncitizens currently living in the United States have sufficient permission to avoid mandatory detention. *See Rodriguez*, 2026 WL 2196424, at *3 ("The implication of the government's position is that Congress in 1996 made a major change to the immigration laws by subjecting millions of unadmitted aliens present in the United States to mandatory detention[.]"). Nevertheless, for someone like Petitioner, who had been unconditionally released for over a decade and after having been found to be neither a danger nor a flight risk, there was a high risk of an erroneous deprivation and there was value in additional pre-deprivation safeguards. This factor favors Petitioner.

3. *Governmental Interest*

Respondents identify their interests here as "ensuring Petitioner's appearance at removal proceedings and efficiently administering immigration laws." Dkt. 5 at 9. However, there were

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

no removal proceedings on the day Petitioner was redetained—they were dismissed twelve years prior. Respondents do not otherwise explain why they believed civil detention was necessary to ensure Petitioner's appearance or why providing a brief pre-deprivation custody hearing would have materially impeded that interest. Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). As for Respondents' asserted interest in the efficient enforcement of immigration laws, that position is difficult to reconcile with DHS's historical treatment of Petitioner discussed above.

The record lacks any evidence showing Petitioner posed a danger to the community or a risk of absconding—the two regulatory goals addressed by civil immigration detention, which itself is intended to be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Accordingly, the Court does not find Respondents have identified an interest that necessitated redetaining Petitioner without pre-deprivation process. This factor favors Petitioner.

All three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset and the absence of exigent circumstances, release is the appropriate, constitutionally required remedy. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

### C.      **Injunctive Relief**

Petitioner also requests the Court "[e]njoin Respondents from continuing to detain [him] absent constitutionally adequate procedures consistent with due process." Dkt. 1 at 18. To the extent this request seeks relief beyond his release ordered under *Mathews* above, Petitioner does

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

not establish an adequate factual record or engage with the elements necessary for injunctive relief.  The request is therefore denied without prejudice.

### IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED in part.  Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention; and within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.  Petitioner's request for injunctive relief is DENIED without prejudice.  The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 7th day of August, 2026.

S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 10